E-FILED
Thursday, 01 July, 2010  04:32:58 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JO ANN  FISCHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  09-3148 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION</u>

CHARLES H. EVANS, U.S. Magistrate Judge:

Plaintiff Jo Ann Fischer (Fischer) appeals from a final decision of the Social Security Administration (SSA) denying her application for Disability Insurance Benefits (DIB) and Supplemental Social Security Income (SSI) under Chapters II and XVI of the Social Security Act, 42 U.S.C. §§ 416, 423, and 1381a.  Fischer brings this appeal pursuant to 42 U.S.C. § 405(g). The parties have consented to a determination of this case by the United States Magistrate Judge, under 28 U.S.C. § 636.  <u>Consent to Proceed Before a United States Magistrate (d/e 7)</u>.  Pursuant to Local Rule 8.1(D), Fischer has filed a Brief in Support of Complaint (d/e 12), which the Court

construes as a motion for summary judgment. The Commissioner has filed a Motion for Summary Affirmance (d/e 13) and Commissioner's Memorandum in Support of Motion for Summary Affirmance (d/e 14).

For the reasons set forth below, the Court determines that the SSA's decision is supported by the law and the evidence. Plaintiff's motion for summary judgment is DENIED. The Commissioner's Motion for Summary Affirmance is GRANTED, and the decision of the Commissioner is AFFIRMED.

<u>STANDARDS</u>

Judicial review of the Commissioner's final determination of disability is limited, and the Commissioner's findings of fact are treated as conclusive as long as they are supported by substantial evidence. 42 U.S.C. § 405(g); <u>Halbrook v. Chater</u>, 925 F. Supp. 563, 571 (N.D. Ill. 1996). "Substantial evidence" means evidence that "a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Powers v. Apfel</u>, 207 F.3d 431, 434 (7th Cir. 2000). On review, courts may not reevaluate evidence, make new factual determinations, or substitute their judgment for that of the Commissioner. <u>Powers</u>, 207 F.3d at 434-35.

Nonetheless, the court must look to the record as a whole to

determine if there is "substantial evidence" supporting for the ALJ's decision.  Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985).  An ALJ's opinion need not evaluate "every piece of testimony and evidence submitted."  Zalewski v. Heckler, 760 F.2d 160, 166 (7th Cir. 1985).  All that is required is that the ALJ "considered the important evidence" in the opinion, thus allowing the courts to "trace the path of the ALJ's reasoning." Stephens, 766 F.2d at 287.

In determining whether an individual is disabled for Social Security purposes, the ALJ must use the five-step sequence outlined in 20 C.F.R. § 404.1520(a).  Each step must be satisfied before moving on to the next step. First, the ALJ determines if the claimant engages in "substantial gainful activity," (SGA) defined as work that involves significant physical or mental activities, usually done for pay or profit.  20 C.F.R. § 416.920(b).  If the claimant is not involved in SGA, step two requires the ALJ to decide whether the claimant has a medically determinable impairment that is "severe," or a combination of impairments that, taken together, are "severe." 20 C.F.R. § 416.920(c).  Severity is measured by whether an impairment significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 416.921; SSRs 85-28, 96-3p, 96-4p.  If such an impairment is

found, the ALJ proceeds to step three.

In step three, the ALJ evaluates whether the claimant's impairment meets criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the ALJ decides in the affirmative, the claimant is disabled. If the claimant's condition is not equivalent to a Listing, the ALJ moves on to step four. Step four requires the ALJ to determine the claimant's residual functional capacity (RFC). The ALJ considers all impairments, not just those found to be severe under step two. 20 C.F.R. § 416.945. The ALJ then determines whether the claimant has the RFC to perform past relevant work.

If the claimant is not able to perform past relevant work, the ALJ moves to step five, where she evaluates whether the claimant is capable of performing other work. 20 C.F.R. § 416.920(g). The ALJ takes into consideration the claimant's RFC, age, education, and work experience. At this juncture, the SSA is responsible for producing evidence that demonstrates that there is work suitable for the claimant in the national economy. 20 C.F.R. §§ 416.912(g), 416.960(c). If the ALJ determines that there is other work available to the claimant, the claimant is not disabled for purposes of SSI or DIB.

<u>FACTS</u>

## I.  PERSONAL & MEDICAL HISTORY

Plaintiff is fifty-six-year-old woman who lives with her mother in Bushnell, Illinois.  Answer (d/e 10), Exs. 1-14, Social Security Transcript (Tr.) at 29-30.  She is five feet, four inches tall and weighs 146 pounds.  Plaintiff graduated from high school and completed two years of college courses.  In 1972, Plaintiff joined the U.S. Army and completed basic training before she became "disillusioned with the beliefs, the concepts" of the U.S. Army, requested relief from duty, and was honorably discharged.  Tr. at 44, 64.  She is divorced from her only marriage and communicates infrequently with her only child, a son. Tr. at 43, 65.

Plaintiff has struggled with mental disorders, alcoholism, and illegal drug use since the 1970s.  Plaintiff began using marijuana, crack cocaine, and alcohol in her late teens and early twenties.  Tr. at 345.  She also has a history of using heroin, downers, uppers, and hallucinogens.  Tr. at 355.  Plaintiff is an alcoholic, as was her father, and has been in seven different residential treatment programs for alcoholism.  Tr. at 345.  Plaintiff's longest period of abstinence from alcohol was four and one-half years and began in May 2000, after she completed a residential treatment program.  Tr. at 345.

In 1976, Plaintiff was hospitalized for several days at Missouri State Hospital in St. Joseph, Missouri, after she tried to commit suicide by overdosing on pills and driving her truck off of a bridge.  Plaintiff has tried to commit suicide on several other occasions.  She was hospitalized at Blessing Hospital in Quincy, Illinois, on January 19, 2006, for suicidal ideation.  Tr. at 414.  Consultation notes indicate that Plaintiff felt depressed and had mood swings and daily auditory hallucinations.  The voices told Plaintiff to hurt her mother.  Tr. at 414.  Plaintiff had been drinking before she was admitted to the hospital, and was not discharged from the hospital until January 30, 2006.  Tr. at 414.  Then, in February 2006, she was admitted again to Blessing with suicidal thoughts.  Plaintiff was admitted on February 12, 2006, and discharged on February 20, 2006.  Tr. at 408.  She was described as being depressed and anxious, and reported feeling worthless and having auditory and visual hallucinations.  Tr. at 336.

In late February 2006, Plaintiff began outpatient alcohol abuse treatment at Great River Recovery Resources in Quincy, Illinois.  Her counselor diagnosed her with alcohol dependence, cocaine dependence (in remission), and major depressive disorder with psychotic features.  Plaintiff

was assessed a Global Assessment of Functioning (GAF) score of 55.[1] Plaintiff also engaged mental health treatment services at Transitions of Western Illinois.  Her counselors noted her willingness to engage in therapy and make changes, and to take advantage of the services offered to her.  Tr. at 366.  A progress note by Dr. Valentina Vrtikapa from March 2006 indicated that Plaintiff was compliant with her medication regimen and that her behavior and functioning were fair.  Tr. at 368.

On May 10, 2006, Dr. Frank Froman from Psychology Associates in Quincy, Illinois, evaluated Plaintiff on behalf of the state agency.  Dr. Froman noted that Plaintiff's affect and mood were unremarkable, and that she made good eye contact.  Dr. Froman recounted Plaintiff's history of alcohol dependence, polysubstance abuse, and major depressive disorder. However, he stated that there was no evidence of a major depressive disorder at the time of his evaluation.  Tr. at 375.  Dr. Froman assigned Plaintiff a GAF of 60, and indicated that she worked twenty-five hours per week at K-Mart and was capable of engaging in and maintaining competitive

---

[1]The GAF scale was designed to "report[] the clinician's judgment of the individual's overall level of functioning."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th Ed. 2000).  A score between 31 and 40 represents "major impairment in several areas," and a score between 41 and 50 indicates "[s]erious symptoms" and "serious impairment in social, occupational, or school functioning . . . ."  Id. at 34.  A score between 51 and 60 reflects moderate symptoms.

employment.  <u>Tr.</u> at 375.  A psychiatric review technique performed by the state agency in May 2006 revealed that Plaintiff's condition, after treatment for alcohol dependence and mental health issues, was "nonsevere."  <u>Tr.</u> at 388.  In June 2006, Plaintiff stopped attending her alcohol dependence therapy sessions at Great River Recovery Resources.  <u>Tr.</u> at 402.  Plaintiff was sober until July 2006, at which point she also stopped taking her medications.  <u>Tr.</u> at 427.

On February 1, 2007, Plaintiff returned to Blessing Hospital, having suicidal thoughts and hearing voices.  <u>Tr.</u> at 427.  She was discharged on February 6, 2007.  Dr. Vrtikapa assigned Plaintiff a GAF score of more than 50, and noted that Plaintiff was not suicidal, had no "abnormalities of thought content or thought processes," and that her depression had improved due to administration of medication.  <u>Tr.</u> at 427.  Plaintiff was diagnosed with recurrent major depressive disorder with psychotic features, alcohol dependence, and a personality disorder.

Plaintiff began going to North Central Behavioral Health System for treatment on February 20, 2007.  <u>Tr.</u> at 481.  Pam Helms, a licensed clinical professional counselor, noted that Plaintiff had a history of depression and alcohol abuse, and that she often heard voices.  <u>Tr.</u> at 483.  Dr. Scott

Wright performed a psychiatric evaluation of Plaintiff and diagnosed her with bipolar affective disorder, episodic alcohol dependence, episodic cocaine dependence, and borderline personality disorder.  Dr. Wright assigned Plaintiff a GAF score of greater than 50.  Tr. at 488-89.

Plaintiff was admitted to the emergency room at McDonough District Hospital in Macomb, Illinois, on March 7, 2007, claiming that she had symptoms of delirium tremens (DT).  Tr. at 449.  She returned again on March 28, 2007.  Plaintiff expressed suicidal thoughts and had a blood alcohol content of .32.  Tr. at 438.  Plaintiff was evaluated on March 29, 2007, and described as having poor judgment and an unkempt appearance. The evaluator noted that although Plaintiff was depressed, "her primary issue is alcoholism, not mental health."  Tr. at 445.  Helms evaluated Plaintiff again on April 10, 2007, noting Plaintiff's depression, anxiety, and alcohol dependence.  Tr. at 601.  Plaintiff heard voices and told Helms that she would become physically ill if she had to be around other people.  Tr. at 603.

Dr. David Biscardi evaluated Plaintiff on behalf of the state agency on May 21, 2007.  Tr. at 617.  He found that Plaintiff met Listing 12.09, which governs substance addiction disorders.  Under Listing 12.04 for

affective disorders, he found that Plaintiff had major depression that did not precisely satisfy the diagnostic criteria. <u>Tr.</u> at 620. Dr. Biscardi determined that Plaintiff's alcoholism markedly limited her activities of daily living, maintenance of social functioning, and maintenance of concentration, persistence, and pace. <u>Tr.</u> at 627. He also found that she had experienced one or two episodes of decompensation due to her alcoholism. Dr. Biscardi concluded that when Plaintiff did not drink alcohol and was compliant with her medication regimen, she functioned fairly well. <u>Tr.</u> at 629.

On June 28, 2007, Plaintiff began treatment with Dr. Brad Hughes. She was diagnosed with schizophrenic affective disorder and alcohol dependence, and assigned a GAF score of 45. Throughout July, Plaintiff continued to describe her symptoms of depression and anxiety as relatively severe. <u>Tr.</u> at 745. From July through September, Dr. Hughes made notes of Plaintiff's symptoms, which seemed to be improving, despite continuing feelings of sadness and anxiety. He consistently gave her GAF scores of 50, and indicated that she had generally refrained from using alcohol. <u>Tr.</u> at 749, 748, 751.

On October 4, 2007, Plaintiff appeared to not be doing well, and expressed feelings of sadness and anxiety. However, Dr. Hughes gave her

a GAF score of 50.  <u>Tr.</u> at 747.  On October 18, 2007, Dr. Hughes evaluated Plaintiff and noted that she was able to go out in public, no longer had paranoid thoughts, and that her hallucinations had subsided.  <u>Tr.</u> at 746.  He assigned her a GAF score of 50.  Also in October 2007, Dr. Hughes completed a Medical Source Statement (MSS) for Plaintiff's claim before the SSA.  He concluded that she had marked impairments in her ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions.  <u>Tr.</u> at 727.  Dr. Hughes wrote that Plaintiff had marked restrictions in interacting appropriately with the public and responding appropriately to usual work situations due to her paranoia.  <u>Tr.</u> at 728.  He noted that her judgment was poor during periods of mania, and found that substance abuse did not appear to play a role in her symptoms.  <u>Tr.</u> at 728.

On November 6, 2007, Plaintiff sought treatment at North Central Behavioral Health Systems. The intake counselor observed that she had a history of depression, anxiety, and alcohol addiction.  <u>Tr.</u> at 796.  By January 2008, Plaintiff's counselors observed that she was not attending her therapy sessions and was self-medicating with alcohol.  <u>Tr.</u> at 799.  On January 17, 2008, Plaintiff complained of hearing voices and feeling sad.

11

She also stated that her medications did not seem to be working.  Tr. at 804.

Plaintiff experienced a set back in February 2008, when she was admitted to the emergency room and described as being intoxicated and expressing suicidal thoughts.  Tr. at 759-60.  Dr. Vrtikapa saw Plaintiff after she was admitted to Blessing Hospital, and noted that Plaintiff's chief complaint was "I stopped taking my medications and I tried to kill myself." Tr. at 772.  Plaintiff admitted that she had starting consuming alcohol again over the past several months, and that her depression was getting worse and worse.  Tr. at 772.  Plaintiff claimed to hear voices.  Dr. Vrtikapa assigned her a GAF of more than 30 at the time of admission, but gave her a score of more than 50 upon discharge.  Tr. at 773, 775.

Dr. Wright evaluated Plaintiff on March 5, 2008.  He gave her a GAF of greater than 50, and recounted her history of depression and substance abuse.  Tr. at 830-31.  He diagnosed her with bipolar affective disorder, continuous alcohol dependence, and cocaine dependence (in remission).  Tr. at 831.  On April 15, 2008, counselors at North Central observed that Plaintiff did well when in therapy, but continued to feel anxious around other people.  Tr. at 823.  However, Plaintiff was still drinking alcohol.  In

May 2008, Plaintiff expressed willingness and a desire to continue her therapy sessions, and apologized for continuing to self-medicate with alcohol. <u>Tr.</u> at 838.  At the end of June 2008, Plaintiff had started drinking again and complained that her medications did not seem to be working. <u>Tr.</u> at 841.  However, she later admitted that she had been drinking and had not been compliant in taking her medications. <u>Tr.</u> at 841.

II.   <u>PROCEDURAL HISTORY</u>

Plaintiff applied for DIB and SSI on March 16, 2007, alleging an onset date of September 1, 2006.  The SSA denied her application initially and on reconsideration. <u>Tr.</u> at 98-100; 104-09.  Plaintiff timely requested a hearing before an administrative law judge (ALJ), <u>Tr.</u> at 110, and on July 24, 2008, Plaintiff and her counsel appeared before ALJ Robert G. O'Blennis and a vocational expert (VE) for an administrative hearing.

Plaintiff testified at the hearing.  She stated that she lived with her mother, who had driven her to the hearing.  Plaintiff chose not to have a driver's license because of her alcoholism and because she received tickets in the past for driving under the influence.  She inherited $20,000 approximately ten months prior to the hearing, but spent it all by buying alcohol, paying back her mother, loaning money to friends, and buying her

sister a computer.  Plaintiff testified that her last job was making French fries at the McDonald's in Quincy, Illinois.  She worked there for about three weeks in early 2007.  Before that, Plaintiff worked cleaning offices, in a pet daycare facility, as an aide in an assisted living facility, and at a laundry and dry-cleaning establishment.  Plaintiff testified that she left her job at McDonald's because she was not taking her medication, became overwhelmed and was unable to understand her supervisor's instructions. Tr. at 34.

Plaintiff said that she takes Lexapro and buspirone,[2] which she obtains through a patient assistance program.  Plaintiff sometimes forgets to take her medication for a few days and up to an entire week.  She said that she gets up in the morning, watches television, and sleeps if she is able.  She occasionally walks the dog around the block and will attend doctor appointments, but does not grocery shop or do laundry or any other household chores.  Plaintiff consumes alcohol once or twice a week, and attends AA meetings twice a week.  She testified that her most recent period of sobriety lasted for approximately one year, from July 2006 until July

---

[2]Plaintiff called this drug "ibusperon," and stated that she was unsure of the pronunciation.  Tr. at 35.

2007.  At that time, Plaintiff was attending AA meetings and counseling sessions with a mental health specialist and psychiatrist.  Tr. at 39.  Despite still being engaged in that course of mental health treatment, Plaintiff began drinking again because she felt sorry for herself and was not functioning the way she wanted to function.  Tr. at 40.

Plaintiff told the ALJ that she had been hospitalized four or five times for psychiatric reasons, with the most recent being in January 2008.  She tried to overdoes on pills.  Plaintiff noted that she had been having hallucinations for twenty years, and that she still hallucinates, although not as badly, when she takes her medication.  She sees animals and people in her peripheral vision, and hears footsteps, ringing telephones, and conversations.  Even when sober, Plaintiff experiences hallucinations.  Plaintiff also testified that she is paranoid around other people, and fears being in public because she believes that people are talking about and laughing at her.  Tr. at 50.

Every few months, Plaintiff experiences bouts of mania, in which she exhibits poor judgment.  During these periods, she has attempted to start up a business or purchase a home.  However, Plaintiff noted that she is depressed most of the time, and spends most of her time in her bedroom.

She drinks in her bedroom and takes Benadryl to help her fall asleep.  She changes her clothes infrequently, and bathes about once a week when her mother suggests it.  Plaintiff does not eat regularly, and sometimes will go one or two days without eating.  Tr. at 54.  Roughly three times a week, Plaintiff has anxiety attacks that cause her to vomit.  Plaintiff regularly has suicidal thoughts and thinks of herself as being a loser.  Tr. at 58-59.

VE Dr. John F. McGown also testified at the hearing.  He listened to Plaintiff's testimony at the hearing and reviewed the documents in Plaintiff's file prior to the hearing.  Tr. at 67.  McGowan catalogued Plaintiff's work history, but had a difficult time determining whether the jobs constituted SGA under the Social Security Regulations because of all the gaps in her employment. Tr. at 68.  Nonetheless, McGowan categorized Plaintiff's past work according to the Dictionary of Occupational Titles.  The ALJ posed a hypothetical to McGowan involving a woman of Plaintiff's age, experience, and education, who could engage in medium exertional limitations (lifting no more than fifty pounds occasionally and twenty-five pounds frequently), and "would do better in jobs that didn't require a close interaction with the public or close teamwork interaction with coworkers."  Tr. at 70.  The VE found that Plaintiff could still perform janitorial and

custodial jobs, in addition to a position as a pet care technician. Additionally, the VE testified that Plaintiff could perform other medium work, including landscaping work. The VE testified that Plaintiff was also capable of performing light work, like commercial and residential cleaning. Tr. at 72.

The VE noted that a person who missed work two days a month or more for medical reasons would not be employable. Also, an individual who showed up late, left early, or took random breaks during the day due to medical issues would not be a candidate for competitive employment. Tr. at 73. The VE testified that an individual with a GAF score below 50 would have difficulty maintaining employment.

On October 24, 2008, the ALJ issued a written decision denying Plaintiff's claim. Tr. at 6-8. The ALJ noted that Plaintiff had worked as a home health aide, laundry worker, library worker, pet care facility worker, and fast food restaurant worker. Tr. at 10. He recounted Plaintiff's mental-health struggles, observing that she was taking medication and attending AA meetings to help her cope. Written statements from Plaintiff's mother and sisters corroborated Plaintiff's descriptions of her symptoms and limitations, noting that Plaintiff is "severely depressed" and rarely, if ever, leaves the

house.  See, e.g., Tr. at 280, 284.

The ALJ determined that Plaintiff had performed SGA until November 30, 2006.  He indicated that Plaintiff had previously been eligible for benefits from September 1986 through April 1989, and then again from February 1991 through January 1997, and speculated that this was due to her substance addiction problems.  Due to changes in the law, though, the ALJ pointed out that a substance addiction disorder precludes entitlement to Social Security benefits if the disorder is a "contributing factor material" to the finding of disability.  Tr. at 11 n.1.

Relying on Plaintiff's medical history, testimony, treating and examining physicians, and work history, the ALJ found that she did not have an impairment or combination of impairments under the Regulations that were "severe."  Tr. at 12.  The ALJ discussed evidence related to some of Plaintiff's physical problems, which are not at issue in this case, and then discussed her mental health history.  The ALJ recounted Plaintiff's hospitalizations in January and February 2006 for suicidal ideation, but noted that, when she was released, her GAF scores were 55 and 50, respectively.  Plaintiff was diagnosed with major depressive disorder with psychotic features and prescribed medications to help her deal with her

illness.  The ALJ reviewed Plaintiff's history of outpatient treatment at Great River Recovery Resources, and noted her psychological examination by Dr. Froman in May 2006.  Dr. Froman found that Plaintiff was doing well, assigned her a GAF score of 60, and noted that her polysubstance addiction was in remission; however, as the ALJ pointed out, Plaintiff stopped taking her medication and began consuming alcohol again in June 2006.

The ALJ went through Plaintiff's other hospitalizations in 2006 and 2007, and reviewed her diagnoses, medication regimens, and courses of therapy.  The ALJ observed that Plaintiff continued to drink alcohol, missed therapy appointments, and forgot to take the medication that her doctors had prescribed.  The ALJ also noted that Plaintiff's treating psychiatrist, Dr. Hughes, consistently assigned Plaintiff a GAF score of around 50.  The ALJ also recounted Dr. Hughes's belief that Plaintiff's mental illnesses would continue, even in the absence of a substance abuse disorder, and that she was moderately to markedly limited in "all areas of mental occupational, performance, and personal-social adjustments."  Tr. at 13.

Nonetheless, the ALJ determined that Plaintiff was capable of performing at least medium work as long as she only had to perform simple,

repetitive tasks and did not have to interact frequently with the public or her coworkers. <u>Tr.</u> at 13.  Plaintiff's past work as a janitor or custodian was still available, even taking into account these limitations, and the ALJ noted that 4,200 commercial cleaning jobs were available in Illinois, according to the VE.  The ALJ recognized that Plaintiff would be unemployable if she missed work two or more days per month because of her medical problems, or had a GAF score of lower than 50 on a consistent basis.  However, the ALJ found that the evidence before him did not demonstrate that Plaintiff met these criteria.

For example, the ALJ determined that, when Plaintiff complied with her medication regimen and attended scheduled therapy session, she functioned fairly well.  Dr. Hughes found a GAF of "not worse than 50." <u>Tr.</u> at 14.  Specifically, the ALJ found that Dr. Hughes's treatment notes from October 4, 2007, were not consonant with the remainder of his treatment notes or the more recent medical evidence in Plaintiff's file.  <u>Tr.</u> at 14.

Even if this was not the case, the ALJ found that Plaintiff would still be precluded from an award of DIB or SSI benefits because "the severity of her mental impairments would be directly attributable to either ongoing

substance abuse, or noncompliance with prescribed medication." <u>Tr.</u> at 14. The ALJ, citing <u>Mittlestedt v. Apfel</u>, 204 F.3d 847 (8th Cir. 2000), found that Plaintiff did not fulfill her burden of showing that her substance addiction disorder was not a "contributing factor material" to her mental impairments.  <u>Tr.</u> at 14.  Furthermore, the ALJ observed that under 20 C.F.R. § 404.1530, Plaintiff's noncompliance with her medication regimen prevented her from receiving an award of benefits because medical evidence showed that she was able to work when she was taking her medication.  <u>Tr.</u> at 15.  The ALJ concluded that

> [i]n sum, the severe mental disorder or disorders in this case (if the undersigned were to find them severe) were directly caused or at least aggravated to the point of severity by substance abuse, and/or are controllable by medication the claimant fails without good reason to take.  Either reason, or both, is sufficient to negate the severity of any diagnosed mental illness in this case.

<u>Tr.</u> at 15.

The ALJ observed that Plaintiff's demeanor at the hearing was normal, and that her descriptions of her symptoms and limitations was not credible. The ALJ stated that, although Plaintiff's mother and sisters corroborated Plaintiff's descriptions of her symptoms, those statements applied when Plaintiff was not sober, or when she was not taking her medication.  <u>Tr.</u> at

15.  He found that she did not have mental illnesses that would impede her from working and observed that some of the most substantial work Plaintiff performed during her life occurred after hospitalizations in January and February 2006 for suicidal ideation.  Tr. at 15.  The ALJ noted the state agency evaluator's finding that Plaintiff had a substance abuse disorder under Listing 12.09, but noted that this disorder did not render Plaintiff disabled for Social Security purposes.  Tr. at 15.

The ALJ concluded that Plaintiff did not meet the criteria in Listings 12.02-12.10, and that she only had mild restrictions of mental activities in daily living, no more than moderate restrictions on social functioning, and no marked deficiencies in concentration, persistence, or pace. Tr. at 16.  He found no periods of decompensation "resulting in a total or extreme loss of adaptive functioning."  Tr. at 16.  Accordingly, the ALJ found Plaintiff capable of returning to past relevant work, or, if not, that she had the RFC to perform other work in the economy.

The SSA Appeals Council denied Plaintiff's request for review on April 15, 2009.  Tr. at 1-3.  Plaintiff then filed this lawsuit challenging the Commissioner's findings.

## ANALYSIS

With the standards described above in mind, the Court addresses each of Plaintiff's eight arguments for reversal in turn.

I.   FAILURE TO COMPLY WITH 20 C.F.R. § 404.1535

Plaintiff first argues that the ALJ erred in the process he used to come to his conclusion that Plaintiff's alcoholism was a material contributing factor to her disability.

Under Social Security Regulations relevant to claimants who are alcoholics, an ALJ first must determine whether he would find the claimant disabled if the claimant stopped using alcohol.  20 C.F.R. §404.1535(b).[3] If the ALJ determines that the "remaining limitations would not be disabling," the ALJ concludes that "alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. § 404.1535(2)(I). The overall question, then, is "whether, were the applicant not a substance abuser, she would still be disabled."  Kangail v. Barnhart, 454 F.3d 627, 629 (7th Cir. 2006).

Here, Plaintiff's objection has no substance.  The ALJ specifically

_____

[3]The relevant regulations for SSI and DIB are virtually identical.  Therefore, from this point forward, the Court will cite only the DIB regulations, found at 20 C.F.R. §§ 404.1501 et seq.  The parallel SSI regulations begin at 20 C.F.R. § 20.901, and the last two digits of the SSI citations correspond with the last two digits of the DIB citations.

stated:

> Even if the undersigned were inclined to find the claimant's
> mental impairments to be so severe so frequently as to
> effectively prevent her from working at a regular job (he is
> making no such finding), the claimant would not be found
> entitled to disability benefits in this case for one of two reasons,
> or possibly both. This is because the severity of her mental
> impairments would be directly attributable to either ongoing
> substance abuse, or noncompliance with prescribed medication.

Tr. at 14. In other words, Plaintiff was not disabled independent of her

alcoholism and/or failure to regularly take prescription medication.

Plaintiff next argues that her alcoholism and mental disorders cannot

be separated because the former is a symptom of the latter. This argument

is likewise without merit. Substantial evidence supports the ALJ's

conclusion that Plaintiff functioned relatively normally when she was not

abusing alcohol or drugs, and when she was taking her medication. The

record before the Court demonstrates that Plaintiff's hospitalizations for

suicidal ideation were brought about because Plaintiff drank alcohol to

excess. In March 2007, Plaintiff visited the emergency room and had a

blood alcohol content of .32, four times the legal limit for operating a motor

vehicle. When she did not drink alcohol and regularly took her prescription

medication, the record demonstrates that Plaintiff was able to maintain

employment, and that her symptoms of depression and anxiety receded. For example, during her March 2007 hospitalization, a treating nurse noted that Plaintiff's "primary issue [wa]s alcoholism, not mental health." Tr. at 445. Dr. Biscardi, the state agency evaluator, concluded that Plaintiff functioned reasonably well when she took her medication and did not drink alcohol. Tr. at 629.

In short, the ALJ's determination that Plaintiff's alcoholism was a contributing factor material to the disability determination was supported by substantial evidence, and this Court will not disturb that finding.

II.   SEVERE IMPAIRMENTS

Plaintiff maintains that the ALJ's finding that her general anxiety disorder, depression, mania, bipolar disorder, paranoia, and hallucinations were not severe impairments was error.

An impairment is severe if it "significantly limits an individual's physical or mental abilities to do basic work activities . . . ." SSR 96-3p. Here, the ALJ found that Plaintiff's "basic abilities to think, understand, communicate, concentrate, get along with other people, and handle normal work stress have never been significantly impaired on any documented long-term basis, when she is known to be medication compliant and sober."

Tr. at 15.  As explained above, the ALJ determined that Plaintiff's mental health problems, on their own, were not severe.   Substantial evidence supports the conclusion that her mental health problems were not severe. For example, the majority of GAF scores Plaintiff received from 2006 through 2008 were 50 or greater, although there were some that fell below 50.  A GAF score of 50 represents only moderate, as opposed to marked, limitations in areas of daily living.  The ALJ did not find that Plaintiff's depression and anxiety disorder had no impact on her life; instead, he determined that they only had a limited impact on her ability to function normally.

The ALJ's finding at step two that Plaintiff's mental health problems, independent of her alcoholism, were not severe was supported by substantial evidence.  Therefore, Plaintiff's request for reversal on this ground is denied.

III.   ERRONEOUS CREDIBILITY DETERMINATION

Third, Plaintiff argues that the ALJ's assessment of her credibility was erroneous.

As the U.S. Court of Appeals for the Seventh Circuit noted, "[a]pplicants for disability benefits have an incentive to exaggerate their symptoms, and an [ALJ] is free to discount the applicant's testimony on the

26

basis of the other evidence in the case." <u>Johnson v. Barnhart</u>, 449 F.3d 804, 805 (7th Cir. 2006). An ALJ's credibility determination can be reversed on judicial review only when it is wholly without support in the record and is thus "patently wrong." <u>Elder v. Astrue</u>, 529 F.3d 408, 413-14 (7th Cir. 2008) (internal quotation marks omitted).

In this case, the Court will not disturb the ALJ's credibility finding because the ALJ explained that other medical evidence in the record did not support Plaintiff's descriptions of her symptoms. The ALJ noted that treatment notes and evaluations by medical professionals indicated that Plaintiff was capable of working when she was taking her medication and not using alcohol. <u>Tr.</u> at 15. Furthermore, the ALJ credited statements submitted by Plaintiff's mother and sisters, but determined that they described Plaintiff's symptoms when she was drinking and not complying with her medication regimen. Medical records indicate that Plaintiff was not always candid with the medical professionals who were treating her. <u>See</u>, <u>e.g.</u>, <u>Tr.</u> at 841.

The ALJ's credibility determination had support in the record and was not "patently wrong." Accordingly, the Court denies Plaintiff's request for reversal on this basis.

IV.   <u>FAILURE TO COMPLY WITH 20 C.F.R. § 404.1520a</u>

Plaintiff contends that the ALJ failed to follow the procedures specified in the Regulations' special technique for evaluating mental illnesses at step three of his evaluation.

Social Security Regulations require an ALJ to assess the functional limitations of a claimant with mental impairments.   20 C.F.R. § 404.1520a(b).  An ALJ must evaluate a claimant's functional limitations in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3).  The Listings of Impairments assist the ALJ in evaluating a claimant's functional limitations, and the ALJ must discuss the findings in his opinion.  20 C.F.R. § 404.1520a(e)(2).

Here, the ALJ went through each of the four broad functional areas, determining that Plaintiff's limitations were only mild in terms of daily living activities, and moderate in terms of social functioning. <u>Tr.</u> at 16.  The ALJ held that Plaintiff had experienced no periods of decompensation, and that she did not have marked limitations in concentration persistence or pace. <u>Tr.</u> at 16.  Plaintiff argues that the ALJ's recitation of these factors did not constitute real, substantive analysis.  However, substantial evidence

undergirds each of the ALJ's findings.  For example, a psychiatric review technique from the state agency is consonant with the ALJ's findings.  <u>Tr.</u> at 386.  Dr. Joseph Mehr found that Plaintiff had no significant limitations in terms of her ability to work and function in the workplace.  <u>Tr.</u> at 390-92.  Even Dr. Hughes's MMS indicated only moderate findings, with marked limitations in Plaintiff's ability to interact with the public and respond appropriately to work situations.  <u>Tr.</u> at 727-28.

Substantial evidence supports the ALJ's functional limitations analysis, and therefore the Court will not reverse the SSA's determination on this ground.

V.   <u>FAILURE TO CONSIDER WITNESS TESTIMONY</u>

Plaintiff's fifth argument is that the ALJ did not give weight to the testimony or observations of her mother and sisters.  An ALJ is required to consider evidence from third parties regarding the claimant's symptoms. SSR 96-7p.

This argument is wholly without factual support, as the ALJ specifically stated that the "testimonials by the claimant's mother and sisters reflect the claimant's state when she is not sober, or not medication compliant, or both."  <u>Tr.</u> at 15.  The ALJ considered the information

29

submitted by Plaintiff's family members, but rejected the testimonials ultimately because they did not comport with other record evidence showing Plaintiff's condition when she was sober and medication compliant. Plaintiff is not entitled to reversal on this ground.

VI.    IMPROPER HYPOTHETICAL TO VE

Next, Plaintiff argues that the ALJ did not take into consideration the testimony of the VE, or, in the alternative, that the hypothetical question the ALJ posed to the VE was fundamentally flawed.  When an ALJ poses a hypothetical question to a VE, that question "must include all limitations supported by medical evidence in the record." Young v. Barnhart, 362 F.3d 995, 1003 (7th Cir. 2004).

In this case, the ALJ did consider the VE's testimony that Plaintiff would be unemployable if she missed two or more days of work per month, or if she required multiple, unscheduled breaks during the regular workday, and if she had a GAF score of under 50.  However, the ALJ found that this conclusion was immaterial because the record evidence did not support a finding that Plaintiff would have problems with absenteeism.  Also, while Plaintiff did have GAF scores during the relevant period that were under 50, the majority of GAF scores were 50 or greater.  Tr. at 14.

Plaintiff also argues that the hypothetical question the ALJ posed to the VE was improper because it did not fully take into account Dr. Hughes's descriptions of Plaintiff's limitations in interacting with others in a workplace context.   However, the hypothetical question the ALJ posed noted that Plaintiff was restricted to "jobs that didn't require a close interaction with the public or close teamwork with coworkers."  <u>Tr.</u> at 70. The VE did testify that Plaintiff would be unemployable if she did, in fact, have marked restrictions in certain areas, as Dr. Hughes had indicated. <u>Tr.</u> at 75. However, the ALJ found that Dr. Hughes's conclusion was not supported by the rest of the medical evidence in Plaintiff's case.  <u>Tr.</u> at 14.

Therefore, the Court rejects Plaintiff's arguments for reversal in this respect.

## VII.   REJECTION OF TREATING PSYCHIATRIST'S OPINION

Plaintiff next argues that the ALJ erroneously excluded her treating psychiatrist's opinion that she was unable to function in the workplace.

Under Social Security Regulations, a treating source's opinion is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ."

20 C.F.R. § 404.1527(d)(2).  The ALJ considers the length of the treating relationship, the extent of the treating relationship, whether the treating source's opinion is supported by medical evidence, and whether the treating source's opinion is consistent with the entire record.   20 C.F.R. § 404.1527(d)(2).

In this case, substantial evidence supports the ALJ's decision not to give Dr. Hughes's opinions expressed in the October 2007 MMS controlling weight.  First, Dr. Hughes treated Plaintiff for only four months, from July 2007 through October 2007.  Second, as the ALJ stated, "the October 4, 2007, assessment by Dr. Hughes does not accurately reflect the preponderance of the evidence from the hospitalizations and from his own clinical notes, and indicates a much graver chronic mental situation than what the treatment notes show."  Tr. at 14.  For example, Dr. Hughes repeatedly noted Plaintiff's improvement in treatment sessions, and consistently gave her GAF scores of 50 or higher.

The ALJ's decision not to give controlling weight to Dr. Hughes is supported by substantial evidence, and the Court will not disturb it.

VIII. ALJ BIAS

Plaintiff's final argument is that the ALJ is biased against Social

32

Security claimants, particularly those who are women, obese, and have fibromyalgia. Plaintiff presents statistics compiled by her attorney's office to support this argument. The Commissioner counters that the record contains no evidence of ALJ bias, and that Plaintiff did not take advantage of administrative procedures designed to address alleged ALJ bias.

Due process of law "demands impartiality on the part of those who function in judicial or quasi-judicial capacities." Schweiker v. McClure, 456 U.S. 188, 195 (1982). Nonetheless, an ALJ is presumed to be unbiased unless the party alleging bias demonstrates that the ALJ has "a conflict of interest or some other specific reason for disqualification." See id. at 195-96. Under Social Security Regulations, a claimant who believes that an ALJ is biased against her can request review from the Appeals Council. See 20 C.F.R. § 404.940; 57 Fed. Reg. 49186-03. However, "[f]act finding with respect to bias claims is to be done at the administrative level and is waived if not brought up below." Ward v. Shalala, 898 F. Supp. 261, 269 (D. Del. 1995).

Plaintiff has waived her claim. The record reflects that she failed to present her bias claim at the administrative level when she appealed the

ALJ's unfavorable decision to the Appeals Council.[4]  She cannot raise this claim for the first time on judicial review.  The available administrative procedures afforded Plaintiff ample opportunity to raise a claim of prejudice or partiality, but she chose not to take advantage of those procedures. Furthermore, the statistics compiled by Plaintiff's attorney are insufficient to sustain a claim of bias.  First, the Court has no assurance that the methodology used to compile the statistics was scientifically sound.  Second, the statistics purport to show a bias against obese female claimants suffering from mental disorders and fibromyalgia; Plaintiff is not obese, nor does she have fibromyalgia, calling into question the relevance of the statistics to her case.  Finally, and most importantly, Plaintiff's attempt to rely on the ALJ's decisions in other claimants' cases is improper, and cannot support a claim of bias against her personally.  See Hepp v. Astrue, 511 F.3d 798, 805 (8th Cir. 2008).

Plaintiff waived her bias claim by failing to raise it at the administrative level, and, therefore, the Court denies her request for relief

_____

[4]As the Commissioner notes, Plaintiff's counsel has a complaint of bias against ALJ Robert G. O'Blennis pending before the Office of Disability Adjudication and Review.  Motion for Summary Affirmance, Ex. A, Declaration of John H. Fraze. However, this complaint does not excuse Plaintiff's failure to utilize the administrative procedures available to her for reporting complaints of ALJ bias.

on this ground.

## CONCLUSION

THEREFORE, Plaintiff's Brief in Support of Complaint (d/e 12), which the Court has construed as a motion for summary judgment, is DENIED.  The Commissioner's Motion for Summary Affirmance (d/e 13) is GRANTED, and the Commissioner's decision is AFFIRMED.  All pending motions are DENIED as MOOT.  This case is closed.

ENTER:   July 1, 2010.

FOR THE COURT:

_____ s/ Charles H. Evans _____
CHARLES H. EVANS
United States Magistrate Judge